# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| S.P., next friend of M.P., ) | | |
| T.P., next friend of M.P., and ) | | |
| D.H., next friend of E.E., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. 3:17-CV-00100 | |
| ) | REEVES/GUYTON | |
| KNOX COUNTY BOARD OF ) | | |
| EDUCATION, KNOX COUNTY, ) | | |
| And TENNESSEE DEPARTMENT ) | | |
| OF EDUCATION, ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM AND ORDER

Plaintiffs allege that Knox County has a policy and practice of busing children with epilepsy from schools without nurses to schools with nurses for administration of the medication Diastat. Plaintiffs contend this practice violates the Individuals with Disabilities Education Act (IDEA) and incorporated state law, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act. Defendants move for summary judgment on plaintiffs' claims.

## I. Plaintiffs' Motion to Submit a Sur-Reply

Plaintiffs move for leave to submit a sur-reply based upon the recent case of *Sophie G. v. Wilson Cnty Schs.*, 2018 WL 3409208 (6th Cir. Jul. 12, 2018). Plaintiffs contend that the Sophie G. case addresses many of the issues pertinent to the defendants' motions for summary judgment. The court agrees. Accordingly, plaintiffs' motion for leave to submit a sur-reply [R. 52] is granted.

## II. Background

During the 2015-16 and 2016-17 school years, E.E. and M.P. were enrolled in two different elementary schools in the Knox County school system. Both children were prescribed an anti-seizure medication called Diastat. The Knox County Board of Education (KCBE) had in effect a policy that required Diastat to be administered only by a nurse.

KCBE's 2008 "Health Services Seizure Disorder Protocol" states that "Students with protocol, which requires Diastat rectal medication or oxygen administration, will attend a school (transferred if necessary) where there is a full time on-site nurse." The Protocol was updated in 2013, but no change was made to the Diastat administration "transfer if necessary" language. The Protocol was updated for a third time in June of 2016. The mandatory language requiring administration of Diastat by a nurse remained, but the "transfer if necessary" language was removed.

Plaintiffs allege that KCBE required students with a Diastat prescription to transfer to a school with a full time nurse if their zoned school was not staffed with a full time nurse, per the Protocol. Plaintiffs contend this violates Tenn. Code Ann. § 49-50-1602(g)(7): "An LEA [local education agency] shall not assign a student with epilepsy or

other seizure disorder to a school other than the school for which the student is zoned . . . because the student has a seizure disorder." KCBE and Knox County state that if a student with a Diastat prescription is zoned to attend a particular school that does not have a full time nurse, they offer the student's parents the opportunity to transfer to a school with a nurse. Alternatively, the school system would transfer a full time nurse to the zoned school. Plaintiffs respond they were never offered this option.

Plaintiffs allege that the Tennessee Department of Education (TDOE) knew KCBE had an illegal policy to transfer students with epilepsy to non-zoned schools and permitted it to continue. Plaintiffs claim that TDOE violated its oversight, supervisory, and monitoring authority over KCBE.

**A. Plaintiff M.P.**

M.P. was scheduled to attend kindergarten at her zoned school, West View Elementary, for the 2016-17 school year. In March 2016, prior to the beginning of the school year, an Individualized Education Plan (IEP) meeting was held for M.P. Her parents did not inform school officials of the Diastat order until after the meeting concluded. Another meeting was planned for May 2016. In April 2016, the principal at Fort Sanders Educational Developmental Center called M.P.'s father about the Diastat prescription. She stated that Diastat required a full time nurse to be at the school and that West View Elementary did not have a full time nurse. She further stated that KCBE had a policy where students with Diastat were transferred to a school with a full time nurse if their zoned school did not have a nurse. She did not say anything about being able to request that a school nurse be installed at West View, just that transfer was required. M.P.'s father examined

3

the 2013 Health Services Protocol, which on its face, was consistent with the principal's explanation. Neither the principal, nor the Protocol, said anything about a student's ability to request that a nurse be provided at West View. M.P.'s father then met with his daughter's neurologist. The neurologist testified the risk of seizures is always present for M.P., even though it is very low. M.P.'s parents decided to discontinue Diastat so M.P. could attend her zoned school. Because West View is .3 of a mile from their home, M.P.'s father determined the removal of Diastat was the lesser of the two evils (the other one being bused to a separate school with no one to administer Diastat on the bus).

On February 3, 2017, M.P. filed with TDOE a Due Process Complaint against TDOE, KCBE, and Knox County. No hearing was conducted as the parties agreed the matter was outside the scope of a FAPE (Free Appropriate Public Education).[1]

**B. Plaintiff E.E.**

When E.E. moved to Tennessee, Copper Ridge was her first zoned school. However, Cooper Ridge lacked a full time nurse. Prior to an IEP meeting, office staff at Copper Ridge called E.E.'s mother and guardian and advised that the IEP meeting would be held at Brickey-McCloud Elementary because, unlike Copper Ridge, it had a full time nurse to administer Diastat. E.E.'s guardian was told it was school policy for E.E. to go to a school with a nurse. Therefore, E.E. would be transferred to the nearest school with a nurse, Brickey-McCloud Elementary. D.H., (E.E.'s guardian) asked whether getting a

---

[1] Plaintiffs' Due Process Complaints were filed before the Supreme Court issued its decision in *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743 (February 22, 2017). After *Fry*, TDOE filed a motion to dismiss on the grounds the hearing officer lacked jurisdiction to hear the case because a FAPE was not the gravamen of the plaintiffs' claims. TDOE's motion to dismiss was granted.

nurse at Copper Ridge was possible and she was told no, it was not being staffed for a nurse for the upcoming year. The IEP meeting notes specifically state "The Team will reconvene at a determined location in order to discuss placement in a school with a full time nurse due to seizure disorder."

E.E. attended Brickey-McCloud Elementary school during the 2015-16 school year. On October 30, 2015, E.E.'s IEP team met at Brickey-McCloud. During the meeting, E.E.'s mother informed the school that she had moved into the Carter Elementary school zone. The IEP team agreed that E.E. should enroll at her zoned school as soon as possible, and that the team would meet again to discuss transitioning services to that school. KCBE was familiar with E.E.'s medical history and knew that E.E. had been prescribed Diastat. KCBE states that Carter Elementary did not (during the 2015-16 school year) offer the special education services required to implement E.E.'s IEP, so E.E. was transferred to East Knox Elementary for special education services. Additionally, East Knox Elementary was staffed by a full time nurse.

Plaintiffs allege KCBE instructed E.E.'s parent and guardian that E.E. would have to transfer to East Knoxville Elementary because Carter Elementary lacked a full time nurse to administer Diastat.

In August 2016, an administrative complaint was filed with TDOE. After an investigation, TDOE responded:

> [TDOE] does not find a procedural or substantive violation of federal and state special education laws nor a violation of Student's entitlement to a free and appropriate public education . . . the IEP of Student did not require that she be educated in a school other than the school she would attend if non-disabled.

On February 3, 2017, E.E. filed a Due Process Complaint against TDOE, KCBE, and Knox County. As with M.P., no hearing was conducted because the parties agreed the matter was outside the scope of a FAPE. *See* fn 1.

E.E. and M.P. state they were subjected to KCBE's policy and practice of transferring them to a school they would not have attended without the Diastat orders. They were instructed about the Protocol and how they must be transferred; they were never told they could have a nurse at their zoned school; and for E.E., she was specifically told she could not. The court notes that both E.E. and M.P. are currently enrolled at their zoned schools, and their claims concern events occurring during the 2015-16 and 2016-17 school years.

### III. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element,

the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### IV. Overview of Applicable Law

This case involves three federal laws and one state law, so a survey of these laws will be instructive. The IDEA guarantees individually tailored educational services for children with disabilities, while Title II and Section 504 promise nondiscriminatory access to public institutions for people with disabilities of all ages. That is not to deny some overlap in coverage – the same conduct might violate all three statutes. But still, these statutory differences mean that a complaint bought under Title II and Section 504 might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation. There is also the state law to consider.

The public education system of Tennessee is set forth in Title 49 of the Tennessee Code. It is structured such that various educational entities have separate and distinct roles in the operation of a public school system. Tenn. Code Ann. § 49-1-201 sets forth the scope of TDOE's responsibilities within the public education system of Tennessee. A review of that statute establishes that TDOE, through the Commissioner of Education, is responsible for implementing the laws and policies adopted by the General Assembly and the State Board of Education. *Id.* It is the duty of the LEA to manage and control all public schools across the state. Tenn. Code Ann. § 49-2-203(a)(2).

The IDEA is a federal statutory scheme that is "designed to give children with disabilities a free appropriate public education [FAPE] designed to meet their unique needs." *Wayne v. Shadowen*, 15 Fed. Appx. 271, 284 (6th Cir. 2001). As defined in the IDEA, a FAPE comprises "special education and related services" including both "instruction" tailored to meet a child's needs and "supportive services" sufficient to permit the child to benefit from that instruction. 20 U.S.C. § 1401. It gives the primary responsibility for choosing the educational method most suitable to the child's needs to state and local education agencies in cooperation with the parents or guardian of the child. *Bd. of Ed. Of Hendrick Hudson Central Sch. Dist., Westchester Cnty v. Rowley*, 458 U.S. 176, 207 (1982). The IDEA sets forth a procedure for ensuring that students with disabilities and their parents are provided with a due process hearing to contest "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415)b)(6)(A). This procedure includes complaints, meetings, and an impartial due process hearing before

a hearing officer. 20 U.S.C. § 1415(f). Any party aggrieved by the findings and decisions of the due process hearing may then bring a civil action in a district court of the United States. 20 U.S.C. § 1415(i)(2)(A).

In determining the educational placement of a child with a disability, each public agency must ensure that the child's placement is as close as possible to the child's home. 34 C.F.R. § 300.116(b)(3). And, unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled. *Id.* at 300.116(c). Moreover, Tennessee law prohibits transferring students with a seizure disorder to a non-zoned school:

> An LEA shall not assign a student with epilepsy or other seizure disorder to a school other than the school for which the student is zoned or would otherwise regularly attend because the student has a seizure disorder.

Tenn. Code Ann. § 49-5-1602(g)(7). State educational agencies, such as the TDOE, must craft a plan that, among other things, allows all disabled children to receive a FAPE in the least restrictive environment. 20 U.S.C. § 1412(a)(1) and (5). TDOE must then supervise its school districts – or local educational agencies – to ensure that they follow this plan. 20 U.S.C. § 1412(a)(11).

Section 504 of the Rehabilitation Act provides that "no individual with a disability shall, solely by reason of a disability, be excluded from "the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The term "program or activity" includes "all of the operations" of a school system. 29 U.S.C. § 794(b)(2)(B).

Covered entities may not provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action "is necessary" to provide those persons "with aid, benefits, or services that are as effective as those provided to others." 34 C.F.R. § 104.4(b)(iv). "A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily." 34 C.F.R. § 104.34(a).

Title II of the ADA and its implementing regulations mandate that no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, such as a public school or school district, or be subjected to discrimination by any such entity. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). Section 504 and Title II claims are routinely considered together because there is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. *See Zuckle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999). Thus, to plead a failure to accommodate under the ADA or Section 504, a plaintiff must allege facts showing that (1) plaintiff needed specific services to enjoy meaningful access to the benefits of a public education, (2) defendant was on notice of the need for those disability-related services, but did not provide those services, and (3) the services were available as a reasonable accommodation. *See Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

School districts are required, among other things, to afford students with epilepsy and other disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to other students. 28 C.F.R. § 35.130(b)(1). Title II also prohibits public entities from (1) providing different or separate aids, benefits, or services to students with disabilities unless necessary to provide such students with aids, benefits, or services that are as effective as those provided to others; (2) limiting students with disabilities in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others; or (3) utilizing criteria or methods of administration that have the effect of discriminating against students with disabilities. 28 C.F.R. §§ 35.130(b)(1), (b)(3).

## V. Analysis

### A. Tennessee Department of Education

TDOE contends it is entitled to summary judgment on plaintiffs' claims because (1) plaintiffs did not exhaust their administrative remedies and (2) plaintiffs cannot show that TDOE violated the IDEA.

#### 1. Exhaustion

TDOE asserts plaintiffs' complaint should be dismissed for failure to exhaust the administrative process because they voluntarily dismissed their administrative complaints.

Plaintiffs respond that prior to filing the instant action, they filed administrative complaints with TDOE's administrative procedures division. At the time, the Supreme Court case of *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743 (2017) had not been decided. Rather, the Sixth Circuit's decision under *Fry* was controlling. In *Fry*, a child with cerebral palsy relied on a service dog ("Wonder") to access her school. The school refused to allow

Wonder and offered a human aide instead. *Id* at 755. The issue was whether this type of access claim required IDEA exhaustion. In a split-panel decision, the Sixth Circuit ruled that any type of accommodation claim required due process exhaustion. *Fry*, 788 F.3d 622 (6th Cir. 2015. The Supreme Court reversed, holding that a complaint seeking redress for discrimination, independent of any FAPE denial, is not subject to exhaustion. *Fry*, 137 S.Ct. at 756.

After the decision of the Supreme Court, plaintiffs filed a motion with the administrative hearing officer to determine whether the hearing officer still had jurisdiction considering the gravamen of plaintiffs' claims was not denial of a FAPE, but discrimination against children who need – instead of a dog like Wonder to access the school – a drug such as Diastat. TDOE also filed a motion to dismiss the administrative complaint arguing the administrative hearing officer lacked jurisdiction. Plaintiffs agreed that sending students with Diastat orders to non-zoned schools is not a violation of a FAPE. TDOE's motion to dismiss for lack of administrative jurisdiction was heard on substance and granted. Thus, plaintiffs did exhaust their administrative remedies, and TDOE's motion to dismiss for failure to exhaust administrative remedies is denied.

   2.   **IDEA**

TDOE argues that because plaintiffs' claims do not involve the denial of a FAPE, but are instead access and discrimination claims, there is no remedy available to them under the IDEA. Plaintiffs respond that, contrary to TDOE's argument, the IDEA, like Section 504 and Title II of the ADA does have an access to one's "zoned school" presumption. 34 C.F.R. § 300.116 (Unless the IEP of a child with a disability requires some other

arrangement, the child is educated in the school that he or she would attend if nondisabled). Moreover, TDOE has oversight responsibilities for all parts of the IDEA separate and apart from the administrative complaint system.  34 C.F.R. § 300.227.  Plaintiffs state they are not focusing on the adequacy of their IEPs or educational programming *per se*; rather they are seeking equal admission to their zoned schools the same as students without Diastat orders are afforded.

In *R.K. v. Bd. of Educ*. 2014 WL 4277482 (E.D.Ky, Aug. 28, 2014), the court considered plaintiffs' complaint that their diabetic child was placed in a school other than his neighborhood or zoned school because his neighborhood school did not have a full time nurse on staff.  The Board considered it necessary to have a full time nurse available for R.K. to monitor his glucose levels and administer insulin injections.  The court found that R.K.'s claims were not related to the manner in which his education was provided, but rather to the physical location of his education and the medical services provided at that location.  *Id.* at *7.  As discussed above, federal law holds the state educational agency ultimately responsible for ensuring that the requirements of the IDEA are fulfilled.  *See* 20 U.S.C. § 1412, 1413; 34 C.F.R. § 300.149(a)(1).  Accordingly, the court finds TDOE's argument that it can only be liable for failing to provide a FAPE is without merit.

Next, TDOE argues it did not violate the IDEA's placement provisions.  TDOE's investigation of E.E.'s administrative complaint concluded that E.E.'s IEP did not require that she be educated in a school other than the school she would attend if nondisabled. Plaintiffs respond that determination of the appropriate placement must include where they would be assigned if they did not have a seizure disorder and use Diastat, consistent with

13

non-discrimination regulations under Section 504 and Title II of the ADA, the regulation under the IDEA, and incorporated Tennessee law.

> In determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency must ensure that (a)(1) the placement decision is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options . . .
> (b)(3) The child's placement is as close as possible to the child's home; and (c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled . . . .

34 C.F.R. § 300.116. In its ruling, TDOE found that E.E. was assigned to East Knox Elementary School for the 2016-17 school year "due to her requirement for a full time nurse." TDOE additionally found "assignment changed to the home school, Carter Elementary School, in August 2016, after parent notified school staff that the Diastat order had been removed."[2] TDOE went on to find: "Student's assignment to a non-zoned school was the result of local practice and does not fall under jurisdiction of the IDEA."

Contrary to defendant's position, TDOE, as the state educational authority, is responsible for ensuring that the requirements of the IDEA are carried out. 34 C.F.R. §§ 300.149 and 300.600. Therefore, TDOE must correct non-compliance where the local school district fails to meet its obligations. 34 C.F.R. § 300.227; *Emma C. v. Eastin*, 2007 WL 4554321 at *4 (N.D.Cal. Dec. 20, 2007). Because there are material issues of fact whether TDOE carried out its duties under the IDEA, its motion for summary judgment is denied.

---

[2] TDOE appears to be confusing the claims of E.E. and M.P. The record shows the reason E.E. was transferred from East Knox Elementary to Carter Elementary was due to the hiring of a full time nurse at Carter.

14

### 3. Tennessee Code Annotated 49-50-1602

TDOE argues plaintiffs cannot maintain a claim for violation of the statute because the Eleventh Amendment provides TDOE with immunity from suit in regard to state law claims. In their response, plaintiffs fail to address TDOE's argument as to Eleventh Amendment immunity. It is well understood "that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Cunningham v. Tennessee Cancer Specialists*, 957 F.Supp.2d 899, 921 (E.D.Tenn. 2013). Accordingly, because plaintiffs fail to address TDOE's argument regarding Eleventh Amendment immunity, TDOE's motion for summary judgment as to violation of Tenn. Code Ann. § 49-50-1602 is granted.

### 4. E.E.'s Claim

TDOE contends that E.E. cannot prove that anyone with authority directed her to transfer schools. According to E.E.'s mother, she moved her family to a new home within the Carter Elementary school zone. Over the summer of 2015, she brought E.E.'s application to Carter Elementary and gave it to a woman sitting in the school office. She does not know who the woman was or what her function was, but assumed she was a secretary. This woman looked at E.E.'s application, saw that E.E. had to take medications, and told her E.E. would have to go to another school because Carter did not have a full time nurse. TDOE contends being told by a "secretary" is insufficient authority to confer liability. TDOE has only addressed E.E.'s transfer to East Knox Elementary, and fails to address E.E.'s earlier transfer from Copper Ridge Elementary.

15

E.E. states that Copper Ridge was her first zoned school. However, Cooper Ridge lacked a full time nurse. Prior to an IEP meeting, office staff at Copper Ridge called E.E.'s mother and guardian and advised that the IEP meeting would be held at Brickey-McCloud Elementary because, unlike Copper Ridge, it had a full time nurse to administer Diastat. E.E.'s guardian was told it was school policy for E.E. to go to a school with a nurse. Therefore, E.E. would be transferred to the nearest school with a nurse, Brickey-McCloud Elementary. Ms. Hartman (E.E.'s guardian) asked whether getting a nurse at Copper Ridge was possible and she was told no, it was not being staffed for a nurse for the upcoming year.

The same thing occurred in 2015 when E.E.'s family moved to Carter Elementary's school zone. When E.E.'s mother brought the application to the Carter office, the staff person read it and told her Carter did not have a full time nurse, and due to the fact that E.E. needed to take medicine at school, that she would have to go to another school. E.E.'s mother was advised that the IEP meeting would be held at East Knox Elementary.

Melissa Massie, KCBE's Director of Student Support Services, testified that E.E.'s family should have been advised of the option to have a nurse at the zoned school. However, plaintiffs argue a nurse at the zoned school was never offered or discussed prior to the decision to transfer E.E. to a non-zoned school.

Records from the TDOE investigation support plaintiff's contentions. TDOE specifically stated the transfer was required due to Diastat. TDOE found "Student was assigned to Brickey-McCloud Elementary School for the 2015-16 and East Knox

Elementary School for the 2016-17 school year due to her requirement for a full time nurse."

The court finds there are material issues of fact regarding the reason for E.E.'s transfer to non-zoned schools, and TDOE's motion for summary judgment is denied.

## V. KNOX COUNTY / KNOX COUNTY BOARD OF EDUCATION

Defendants Knox County and KCBE have jointly moved for summary judgment on plaintiffs' claims under Tenn. Code Ann. § 49-5-1602(g)(7), the IDEA, Section 504 and the ADA. The court will refer to both defendants as KCBE.

KCBE asserts plaintiffs cannot show a violation of Tenn. Code Ann. § 49-50-1602(g) because its practice is to bring a nurse to the zoned school rather than transfer a student. KCBE states that plaintiffs could have asked that a nurse be provided at their zoned schools, but instead chose to transfer to a non-zoned school (in the case of E.E.) and discontinue the Diastat order (in the case of M.P.).

Plaintiffs respond that KCBE's Health Services Protocol mentions nothing about a nurse being provided at the zoned school if requested, but instead states that students will be "transferred if necessary." Plaintiffs further state that KCBE never offered or even told them they had a choice of having a nurse at their zoned schools.

There are material issues of fact regarding KCBE's official policy, and more importantly here, how that policy was actually administered. The IEP meeting notes for E.E. state "The team will reconvene at a determined location in order to discuss placement in a school with a full time nurse due to seizure disorder." This appears contrary to Tenn. Code Ann. § 49-5-1602(g)(7) which states "An LEA shall not assign a student with

17

epilepsy or other seizure disorder to a school other than the school for which the student is zoned or would otherwise regularly attend because the student has a seizure disorder."

Next, both families were advised that a transfer was necessary due to Diastat. KCBE staff advised E.E.'s family that Copper Ridge lacked a nurse and that E.E. would have to be transferred. Having a nurse at Copper Ridge was not an option. Again, when E.E. moved to Carter Elementary's school zone, her mother was advised by the school that because E.E. needed to take medicine at school that she would have to go another school, and the IEP meeting would be held at East Knox Elementary. M.P.'s family was instructed by the principal of her school that she could not attend her zoned kindergarten if she required Diastat. Neither family was offered the choice of having a full time nurse installed at the zoned schools.

Melissa Massie, Director of Student Support Services, testified that the families should have been advised of the option to have a nurse at the zoned school. However, nothing in the record shows that a nurse at their zoned schools was ever offered to plaintiffs.

Kimberley Kredich, a parent advocate for children with special needs, advocated for M.P. and E.E. in the Knox County School System. She testified that at no time did KCBE ever tell plaintiffs they could have demanded or requested a full time nurse be placed at their zoned schools. The Protocol makes no mention of requesting a nurse and the parents were never advised they could request a nurse at the zoned school.

Finally, in response to E.E.'s Due Process Complaint, KCBE stated:

[KCBE] practice is to have only a nurse provide the medication, Diastat, due to the risks that [sic] associated with seizures and this medication. Consistent with this practice, when [E.E.'s] family moved to the Carter Elementary

18

School zone, there was not a full time nurse at this school. The team discussed and offered a transfer to East Knox Elementary with transportation. Parent did not object to the change in schools during the IEP meeting or other meetings with the school staff.

In the administrative filing, KCBE acknowledged that a full time nurse was not available at Carter Elementary and that E.E. was transferred to East Knox Elementary due to Diastat. Although KCBE now states that E.E.'s special education needs were the reason for her transfer to a non-zoned school, the record contains specific references regarding transfer because of Diastat. These are issues of fact to be resolved at trial, and KCBE's motion for summary judgment is denied.

### VI. Conclusion

In light of the foregoing discussion, the following action is taken:

1. Plaintiffs' motion for leave to file a sur-reply [R. 52] is **GRANTED**.

2. Defendant Tennessee Department of Education's motion for summary Judgment [R. 31] is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to plaintiffs' claim for violation of Tenn. Code Ann. § 49-50-1602. In all other respects, the motion is **DENIED**.

3. Knox County and Knox County Board of Education's motions for summary judgment [R. 35, 37] are **DENIED**.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE