UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| S.P., next friend of M.P., ) | |
| T.P., next friend of M.P., and ) | |
| D.H., next friend of E.E., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:17-CV-100 |
| ) | REEVES/POPLIN |
| KNOX COUNTY BOARD OF ) | |
| EDUCATION, KNOX COUNTY, ) | |
| And TENNESSEE DEPARTMENT ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs allege that Knox County has a policy and practice of busing children with epilepsy from schools without nurses to schools with nurses for administration of the medication Diastat. Plaintiffs contend this practice violates the Individuals with Disabilities Education Act (IDEA) and incorporated state law, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act. Defendants moved for summary judgment on plaintiffs' claims. The court granted defendant Tennessee Department of Education's (TDOE) motion as to a violation of Tenn. Code Ann. § 49-50-1602 and dismissed the claim on the basis of Eleventh Amendment immunity. In all other respects the motion of TDOE was denied as was the motion for summary judgment filed by Knox County and the Knox County Board of Education (KCBE).

1

This matter is back before the court on TDOE's motion for reconsideration.

## I. Positions of the Parties

**A.    TDOE**

TDOE asks the court to reconsider its denial of TDOE's motion for summary judgment in which the court found that the IDEA provides a remedy for actions "unrelated to the denial of a free and appropriate public education" (FAPE). TDOE maintains that the IDEA provides no such remedy.

**B.    Plaintiffs**

Plaintiffs argue they are using both the incorporated Tennessee law and the zoned preferences of the IDEA to bring an access case and TDOE must enforce the IDEA and incorporated state law concerning zoned school access.

## II. Background

During the 2015-16 and 2016-17 school years, E.E. and M.P. were enrolled in two different elementary schools in the Knox County school system. Both children were prescribed the anti-seizure medication Diastat. The Knox County Board of Education (KCBE) had in effect a policy that required Diastat to be administered only by a nurse.

KCBE's 2008 "Health Services Seizure Disorder Protocol" states that "Students with protocol, which requires Diastat rectal medication or oxygen administration, will attend a school (transferred if necessary) where there is a full-time on-site nurse." The Protocol was updated in 2013, but no change was made to the Diastat administration "transfer if necessary" language. The Protocol was updated for a third time in June of

2016. The mandatory language requiring administration of Diastat by a nurse remained, but the "transfer if necessary" language was removed.

Plaintiffs allege that KCBE required students with a Diastat prescription to transfer to a school with a full-time nurse if their zoned school was not staffed with a full-time nurse, per the Protocol. Plaintiffs contend this violates Tenn. Code Ann. § 49-50-1602(g)(7): "An LEA [local education agency] shall not assign a student with epilepsy or other seizure disorder to a school other than the school for which the student is zoned . . . because the student has a seizure disorder." KCBE and Knox County state that if a student with a Diastat prescription is zoned to attend a particular school that does not have a full-time nurse, they offer the student's parents the opportunity to transfer to a school with a nurse. Alternatively, the school system would transfer a full-time nurse to the zoned school. Plaintiffs respond they were never offered this option.

Plaintiffs allege that the Tennessee Department of Education (TDOE) knew KCBE had an illegal policy to transfer students with epilepsy to non-zoned schools and permitted it to continue. Plaintiffs claim that TDOE violated its oversight, supervisory, and monitoring authority over KCBE.

**A. Plaintiff M.P.**

M.P. is an eligible child with a "disability" under the IDEA. Due to a neurological impairment, she receives special education through an Individualized Education Plan (IEP). M.P. was scheduled to attend kindergarten at her zoned school, West View Elementary, for the 2016-17 school year. In March 2016, prior to the beginning of the school year, an IEP meeting was held for M.P. Her parents did not inform school officials

3

of the Diastat order until after the meeting concluded. Another meeting was planned for May 2016. In April 2016, the principal at Fort Sanders Educational Developmental Center called M.P.'s father about the Diastat prescription. She stated that Diastat required a full-time nurse to be at the school and that West View Elementary did not have a full-time nurse. She further stated that KCBE had a policy where students with Diastat were transferred to a school with a full-time nurse if their zoned school did not have a nurse. She did not say anything about being able to request that a school nurse be installed at West View, just that transfer was required. M.P.'s father examined the 2013 Health Services Protocol, which on its face, was consistent with the principal's explanation. Neither the principal, nor the Protocol, said anything about a student's ability to request that a nurse be provided at West View. M.P.'s father then met with his daughter's neurologist and was advised the risk of seizures is always present for M.P., even though it is very low. M.P.'s parents decided to discontinue Diastat so M.P. could attend her zoned school. Because West View is .3 of a mile from their home, M.P.'s father determined removal of Diastat was the lesser of the two evils (the other one being bused to a separate school with no one to administer Diastat on the bus).

On February 3, 2017, M.P. filed with TDOE a Due Process Complaint against TDOE, KCBE, and Knox County. No hearing was conducted as the parties agreed the matter was outside the scope of a FAPE (Free Appropriate Public Education).[1]

---

[1] Plaintiffs' Due Process Complaints were filed before the Supreme Court issued its decision in *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743 (February 22, 2017). After *Fry*, TDOE filed a motion to dismiss on the grounds the hearing officer lacked jurisdiction to hear the case because a FAPE was not the gravamen of the plaintiffs' claims. TDOE's motion to dismiss was granted.

## B. Plaintiff E.E.

E.E. is an eligible child with a "disability" under the IDEA. Due to a neurological impairment, she receives special education through an Individualized Education Plan (IEP). When E.E. moved to Tennessee, Copper Ridge was her first zoned school. However, Copper Ridge lacked a full-time nurse. Prior to an IEP meeting, office staff at Copper Ridge called E.E.'s mother and guardian and advised that the IEP meeting would be held at Brickey-McCloud Elementary because, unlike Copper Ridge, it had a full-time nurse to administer Diastat. E.E.'s guardian was told it was school policy for E.E. to go to a school with a nurse. Therefore, E.E. would be transferred to the nearest school with a nurse, Brickey-McCloud Elementary. D.H., (E.E.'s guardian) asked whether getting a nurse at Copper Ridge was possible and she was told no, it was not being staffed for a nurse for the upcoming year. The IEP meeting notes specifically state "The Team will reconvene at a determined location in order to discuss placement in a school with a full-time nurse due to seizure disorder."

E.E. attended Brickey-McCloud Elementary school during the 2015-16 school year. On October 30, 2015, E.E.'s IEP team met at Brickey-McCloud. During the meeting, E.E.'s mother informed the school that she had moved into the Carter Elementary school zone. The IEP team agreed that E.E. should enroll at her zoned school as soon as possible, and that the team would meet again to discuss transitioning services to that school. KCBE was familiar with E.E.'s medical history and knew that E.E. had been prescribed Diastat. KCBE states that Carter Elementary did not (during the 2015-16 school year) offer the special education services required to implement E.E.'s IEP, so E.E. was transferred to

East Knox Elementary for special education services. Additionally, East Knox Elementary was staffed by a full-time nurse.

Plaintiffs allege KCBE instructed E.E.'s parent and guardian that E.E. would have to transfer to East Knoxville Elementary because Carter Elementary lacked a full-time nurse to administer Diastat.

In August 2016, an administrative complaint was filed with TDOE. After an investigation, TDOE responded:

> [TDOE] does not find a procedural or substantive violation of federal and state special education laws nor a violation of Student's entitlement to a free and appropriate public education . . . the IEP of Student did not require that she be educated in a school other than the school she would attend if non-disabled.

On February 3, 2017, E.E. filed a Due Process Complaint against TDOE, KCBE, and Knox County. As with M.P., no hearing was conducted because the parties agreed the matter was outside the scope of a FAPE. *See* fn 1.

E.E. and M.P. state they were subjected to KCBE's policy and practice of transferring them to a school they would not have attended without the Diastat orders. They were instructed about the Protocol and how they must be transferred; they were never told they could have a nurse at their zoned school; and for E.E., she was specifically told she could not. The court notes that both E.E. and M.P. are currently enrolled at their zoned schools, and their claims concern events occurring during the 2015-16 and 2016-17 school years.

## III. Standard of Review

Federal Rule of Civil Procedure 54(b) provides that any order or other decision that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. *In re Saffady,* 524 F.3d 799, 803 (6th Cir. 2008). Courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law, (2) new evidence available, or (3) a need to correct a clear error or prevent manifest injustice. *Luna v. Bell,* 887 F.3d 290, 297 (6th Cir. 2018).

## IV. Overview of Applicable Law

As stated in the court's prior opinion, the IDEA guarantees individually tailored educational services for children with disabilities, while Title II and Section 504 promise nondiscriminatory access to public institutions for people with disabilities of all ages.[2] That is some overlap in coverage – the same conduct might violate all three statutes. But still, these statutory differences mean that a complaint bought under Title II and Section 504 might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation. There is also the state law to consider.

---

[2] Plaintiffs also alleged violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, but only against defendants Knox County and the Knox County Board of Education. The court's discussion will therefore only consider the IDEA and its incorporation of state law.

The public education system of Tennessee is set forth in Title 49 of the Tennessee Code. It is structured such that various educational entities have separate and distinct roles in the operation of a public school system. Tenn. Code Ann. § 49-1-201 sets forth the scope of TDOE's responsibilities within the public education system of Tennessee. A review of that statute establishes that TDOE, through the Commissioner of Education, is responsible for implementing the laws and policies adopted by the General Assembly and the State Board of Education. *Id.* It is the duty of the local education agency to manage and control all public schools across the state. Tenn. Code Ann. § 49-2-203(a)(2).

The IDEA is a federal statutory scheme that is "designed to give children with disabilities a free appropriate public education [FAPE] designed to meet their unique needs." *Wayne v. Shadowen*, 15 Fed. Appx. 271, 284 (6th Cir. 2001). As defined in the IDEA, a FAPE comprises "special education and related services" including both "instruction" tailored to meet a child's needs and "supportive services" sufficient to permit the child to benefit from that instruction. 20 U.S.C. § 1401. It gives the primary responsibility for choosing the educational method most suitable to the child's needs to state and local education agencies in cooperation with the parents or guardian of the child. *Bd. of Ed. Of Hendrick Hudson Central Sch. Dist., Westchester Cnty v. Rowley*, 458 U.S. 176, 207 (1982). The IDEA sets forth a procedure for ensuring that students with disabilities and their parents are provided with a due process hearing to contest "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). This procedure includes complaints, meetings, and an impartial due process hearing before

a hearing officer. 20 U.S.C. § 1415(f). Any party aggrieved by the findings and decisions of the due process hearing may then bring a civil action in a district court of the United States. 20 U.S.C. § 1415(i)(2)(A).

In determining the educational placement of a child with a disability, each public agency must ensure that the child's placement is as close as possible to the child's home. 34 C.F.R. § 300.116(b)(3). And, unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled. *Id.* at 300.116(c). Moreover, Tennessee law prohibits transferring students with a seizure disorder to a non-zoned school:

> An LEA [local education agency] shall not assign a student with epilepsy or other seizure disorder to a school other than the school for which the student is zoned or would otherwise regularly attend because the student has a seizure disorder.

Tenn. Code Ann. § 49-5-1602(g)(7). State educational agencies, such as the TDOE, must craft a plan that, among other things, allows all disabled children to receive a FAPE in the least restrictive environment. 20 U.S.C. § 1412(a)(1) and (5). TDOE must then supervise its school districts – or local educational agencies – to ensure that they follow this plan. 20 U.S.C. § 1412(a)(11).

**V. Analysis**

TDOE argues that because plaintiffs' claims do not involve the denial of a FAPE, but are instead access and discrimination claims, there is no remedy available to them under the IDEA. Plaintiffs respond that, contrary to TDOE's argument, the IDEA, like Section 504 and Title II of the ADA, does have an access to one's "zoned school" presumption. 34

9

C.F.R. § 300.116 (Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled). Moreover, TDOE has oversight responsibilities for all parts of the IDEA separate and apart from the administrative complaint system. 34 C.F.R. § 300.227. Plaintiffs state they are not focusing on the adequacy of their IEPs or educational programming *per se*; rather they are seeking equal admission to their zoned schools the same as students without Diastat orders are afforded.

In *R.K. v. Bd. of Educ*. 2014 WL 4277482 (E.D.Ky, Aug. 28, 2014), the court considered plaintiffs' complaint that their diabetic child was placed in a school other than his neighborhood or zoned school because his neighborhood school did not have a full-time nurse on staff. The school board considered it necessary to have a full-time nurse available for R.K. to monitor his glucose levels and administer insulin injections. The court found that R.K.'s claims were not related to the manner in which his education was provided, but rather to the physical location of his education and the medical services provided at that location. *Id.* at \*7. TDOE argues that because the *R.K.* court found the placement claim had no nexus to the IDEA, this court should likewise find that the IDEA provides no remedy to plaintiffs. The court disagrees.

In *R.K.* the plaintiff did not have any unique educational needs or require any specialized educational placement and could participate in a standard curriculum. The plaintiffs in this case require specialized educational services along with their medical orders for Diastat. In a case cited by TDOE, *L.H. v. Hamilton Cnty. Dep't of Educ.,* 900 F.3d 799 (6th Cir. 2018) decided after the court's order in this case, the Sixth Circuit held

that the IDEA's least restrictive environment requirement (LRE) cannot be divorced from the FAPE requirement: "A FAPE has two requirements . . . the school must prepare an individualized education program (IEP) for the disabled student; and that IEP must provide the FAPE so as to educate the disabled student in the least restrictive environment (LRE) possible. *Id.* at 788. This is precisely what plaintiffs are asserting, TDOE failed to ensure that they were educated in the least restrictive environment by transferring them to a school outside their zoned district.

Moreover, when a state special-education law is more protective than the IDEA, a violation of state law can amount to a violation of the IDEA. *Doe v. Bd. of Educ. Of Tullahoma City Schs.,* 6th Cir. 1993). Therefore, under *Doe*, the provisions of state law are enforceable under the IDEA, and TDOE can be liable for violations. *I.L. v. Knox Cnty Bd. of Educ.,* 257 F.Supp.3d 946, 964 (E.D.Tenn. 2017). Tenn. Code Ann. § 49-5-1602(g)(7) prohibits the transfer of students with Diastat orders to non-zoned schools based upon their medical conditions. As stated in the court's prior order, the IDEA includes access to a student's "zoned school". See 34 C.F.R. § 300.116 (unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled). TDOE is responsible for ensuring that the requirements of the IDEA and incorporated state law are carried out, including access to a student's "zoned school." Therefore, the court finds TDOE's motion for reconsideration without merit.

## VI. Motion for Sanctions

Plaintiffs move for sanctions against TDOE for the agency's failure to participate in mediation in good faith. Plaintiffs state that prior to the mediation conference, TDOE notified the parties that it would refuse to contribute anything toward a settlement and it would continue to litigate its position that the court erred in finding that the IDEA provides a remedy for actions unrelated to the denial of a FAPE. Plaintiffs seek payment of attorney's fees and costs for preparation and attendance at the mediation.

TDOE replies that once it made its position clear, it was plaintiffs' responsibility to notify the court that mediation was premature. The court disagrees.

After summary judgment was denied to defendants, the court ordered the parties to mediation under Local Rule 16.4(a). This rule requires attendance of parties, or party representatives "with full authority to negotiate a settlement." LR 165.4(l). Failure to comply with the attendance or settlement authority requirements subjects a party to sanctions by the court. *Id.* On October 3, 2018, prior to the mediation scheduled for October 17, TDOE sent an email to the parties stating it was "filing a motion to reconsider and will not be in a position to offer anything towards a settlement." TDOE attended the mediation with counsel and a representative, but with no authority to contribute toward a settlement. The mediator, facing no contribution from TDOE, sent TDOE home early. Although Knox County and plaintiffs continued settlement discussions over the course of several hours, they were not able to resolve the case.

Federal courts hold that a party's decision not to contribute without seeking a modification or withdrawal of the court's order prior to a settlement conference shows an utter lack of respect for the court. *See Empire Inc. v. Wal-Mart Stores, Inc.,* 188F.R.D. 478, 481 (E.D.Ky. 1999); *see also Spradlin v. Richard*, 572 Fed. Appx. 420, 426 (6th Cir. 2014) (unpreparedness to negotiate violates a mediation order under Fed. R. Civ. P. 16(f)). Here, TDOE failed to advise the court that it was filing a motion to reconsider or that it would refuse to contribute anything in the mediation. Nor did TDOE ask for a postponement of the mediation. This increased the time and expense for all parties involved. The court recognizes that it cannot compel a party to settle a case, but when a party displays bad faith and needlessly delays resolution of a case increasing the time and expense to the parties, the court finds sanctions are appropriate.

## VII. Conclusion

In light of the foregoing discussion, the following action is taken:

1. Defendant Tennessee Department of Education's motion for reconsideration [R. 60] is **DENIED**.

2. Plaintiffs' motion for sanctions [R. 64] is **GRANTED**.

3. Plaintiffs shall file their motion for attorney's fees and costs related to the mediation within thirty (30) days.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**